## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEBRA SYLVESTER,

                    Plaintiff,

    vs.

DGMB CASINO, LLC, et al .,

                    Defendant.

Civil Action No. 15-cv-08328-RMB-KMW

## JOINT FINAL PRETRIAL ORDER

The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. See Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

**ATTORNEYS FOR PLAINTIFF**

Zachary R. Wall, Esquire
Rachel S. London, Esquire
WALL & LONDON LLC
34 Tanner Street, Suite 4
Haddonfield, NJ 08033
Phone: 856-428-1480
Fax: 856-428-1446
E-mail: zwall@wallandlondon.com

**ATTORNEYS FOR DEFENDANT**

Russell L. Lichtenstein, Esquire
Stephanie E. Farrell, Esquire
COOPER LEVENSON, P.A.
1125 Atlantic Avenue – 3rd Floor
Atlantic City, NJ 08401
Phone: 609-344-3161
Fax: 609-344-0939
E-mail: rlichtenstein@cooperlevenson.com

**PART I.      JURISDICTION and BRIEF SUMMARY OF THE CASE:**

Jurisdiction of the Court was invoked pursuant to 28 USC §1331. Jurisdiction of the State claims is pursuant to the supplemental jurisdiction of this Court, 28 U.S.C. § 1367. Venue is laid in this District pursuant to 28 USC §1391(b).

Plaintiff, Debra Sylvester ("Plaintiff"), is a former employee of DGMB Casino, LLC d/b/a Resorts Casino Hotel ("Resorts").  Plaintiff was terminated from her employment with Resorts on September 25, 2015.  Plaintiff claims that Resorts discriminated against her based on an alleged disability in violation of the New Jersey Law Against Discrimination when it terminated her.  Resorts contends that Plaintiff was terminated for insubordinate and unprofessional conduct during a training session and that it was not aware of an alleged disability at the time it terminated her.

**PART II.      STIPULATED FACTS:**

1.      Plaintiff was hired by Defendant on or about December 7, 2010 as a dual rate dealer in the games department and remained employed until her termination on September 25, 2015.

2.      Plaintiff was at all times an at-will employee.

3.      As a dual rate dealer, Plaintiff worked some shifts as a dealer and others as a supervisor.

4.      Because Plaintiff was a dual rate dealer, who sometimes worked as a supervisor, she was required to attend a customer service training program at Resorts in September of 2015.

5.      Plaintiff learned that she was required to attend the training program via a memo that was placed in the gaming pit where she worked.

6.      Plaintiff was required to attend the training session on September 22, 2015.

7.     The training session on September 22, 2015 involved several activities.

8.     These activities involved the use of nametags, a beach ball, a hula hoop, and blindfolds.

9.     The nametag activity, for example, required the attendees to write the name of their pet and the street on which they lived on a nametag, instead of their real name.

10.     All of the people running the program were women.

11.     Plaintiff was advised during a meeting with Danny Fanty and Kevin Brady that she was being terminated.

**PART III.     PLAINTIFF'S CONTESTED FACTS:**

1. **Plaintiff intends to prove the following contested facts with regard to liability:**

Excellent Work Performance History

1. On September 28, 2014, Resorts awarded Ms. Sylvester a "Positive Work History Commendation" for a job well done and for maintaining her professionalism.

2. In her most recent formal performance review, Ms. Sylvester's supervisor stated that *"Debbie consistently exhibits courtesy when interacting with guests."*

3. In July 2015, Resorts' President and CEO, Mark Giannantonio, was sent a customer letter specifically referencing the excellent customer service of Ms. Sylvester.

4. In August 2015, a month before she was terminated, Ms. Sylvester was awarded with a "You Make A Difference" certificate for *"providing exceptional service."* The certificate referenced the comments that *"Debra is always smiling. She is a diamond working for you as she creates a family atmosphere."*

5. Resorts' Vice President of Casino Operations, Kevin Brady ("Mr. Brady"), acknowledged that the certificate was awarded to employees that "provide excellence

in customer service."

6. Barbara Hulsizer ("Ms. Hulsizer"), Executive Director of Workforce Development, was not aware of any problems with Ms. Sylvester's job performance.

Plaintiff's Medical Treatment & Request for FMLA leave

7. On August 28, 2015, Ms. Sylvester sought medical treatment for persistent cervical and lumbar pain. After radiological analysis, Ms. Sylvester was diagnosed with lumbar spondylosis and facet osteoarthritis (degenerative spine arthritis).

8. During the 28 days between August 28 and September 25, 2015, Ms. Sylvester was treated at Atlantic County Family Spine and Rehabilitation Center, LLC on twelve (12) separate occasions.

9. Ms. Sylvester was having a lot of pain "standing on the floor and doing [her] job."

10. On September 12, 2015, Ms. Sylvester visited Resorts' human resources office, provided identifying information including her name and job department, and requested FMLA leave paperwork.

11. Ms. Sylvester brought the FMLA application paperwork to her medical provider prior to September 22, 2015.

12. On September 23, 2015, Thomas Keating, D.C. from Atlantic County Family Spine and Rehabilitation Center, LLC completed the U.S. Department of Labor's Certification of Health Care Provider for Employee's Serious Health Condition.

Employee-Training Program

13. On September 22, 2015, Ms. Sylvester attended a three-hour-long customer service employee-training program scheduled immediately before her scheduled work shift.

14. The training program consisted of mandatory "games" involving a beach ball and

physical exercise with hula hoops.

15. Ms. Sylvester participated, as much as she was physically able, in every activity in which she was selected.

16. Ms. Sylvester never refused to participate in any activity.

17. Ms. Sylvester specifically remembered participating in a name tag activity.

18. Ms. Sylvester participated in a beach ball activity which consisted of passing a colored ball around and answering a question.

19. Ms. Sylvester also participated in an activity involving a hula hoop, but was not able to complete the exercise because of her back pain. She described the game as requiring four or five people to balance the hula hoop on their fingers, and work to get it down to the ground. Because of her back pain, Ms. Sylvester was unable to "bend all the way down to the ground."

20. Resorts' Executive Director of Table Games, Danny Fanty was told that Ms. Sylvester "didn't participate in anything."

21. Towards the end of the program, Ms. Sylvester stood up to leave and start her scheduled shift.

22. After the training concluded, Plaintiff went down to the casino floor to start her shift.

23. Prior to her termination, nobody approached Ms. Sylvester to inform her that Resorts was allegedly unhappy with something that happened in the training.

24. Nobody told Ms. Sylvester that she was allowed to be late for the start of her shift because of the training or that her managers would know where she was if she was late.

25. There was nothing in the memo that informed employees that they would be allowed

to be late for their shifts or that their individual supervisors knew that they would be at a training.

26. Nobody told Ms. Sylvester that she was allowed to be late for the start of her shift.

27. Ms. Hulsizer never asked Ms. Sylvester if there was something bothering her or if something was wrong.

28. Prior to her termination on September 25, 2015, nobody approached Ms. Sylvester to inform her that Resorts was allegedly unhappy with something that happened in the training.

Termination of Plaintiff's Employment

29. On Thursday, September 24, 2015, which was Plaintiff's regular day off, she received a call from her immediate supervisor, Frank Jakimowicz, advising her that she needed to go in to the office to meet with Danny Fanty and Kevin Brady on Friday afternoon, her other regularly scheduled day off.

30. On September 24, 2015, Ms. Sylvester told her supervisor, Frank Jakimowicz, that she had a chiropractor appointment the following morning to treat her back pain.

31. Mr. Jakimowicz was the individual who informed Ms. Sylvester that Mr. Brady and Mr. Fanty wanted to meet with her on September 25, 2015, after her medical appointment.

32. On September 25, 2015, Ms. Sylvester attended a meeting with Mr. Brady, Vice President of Casino Operations, and Mr. Fanty, Executive Director of Table Games. She had no idea what they wanted to talk to her about. *S*

33. Mr. Brady stated that he was not happy that Ms. Sylvester "stood up" during the training program.

- 6 -

34. Mr. Brady did not inform Ms. Sylvester that she was terminated until after he asked her "what had happened" and "what was wrong."

35. Ms. Sylvester explained that she was in pain during the training program and that she had been "seeing a chiropractor three times a week for back pain."

36. According to Mr. Brady, the decision to terminate Ms. Sylvester was not made prior to the September 25, 2015 meeting.

37. However, Mr. Fanty testified that the "a decision was made to terminate" in a prior meeting with Mr. Brady and Ms. Hulsizer.

38. Resorts could reconsider a recommendation to terminate if an employee had a *bona fide* reason or plausible explanation for behavior.

39. Resorts could have taken a "step back" and decided not to terminate an employee if they found out that she was under a doctor's care.

40. Ms. Sylvester had picked up the completed FMLA application from her doctor and had the paperwork with her on the day that she was terminated.

41. The decision to terminate Ms. Sylvester's employment was made collectively by him, Mr. Fanty, and Ms. Hulsizer.

42. Ms. Hulsizer denied that she participated in the decision to terminate.

43. Ms. Hulsizer also denied that she recommended that Ms. Sylvester be terminated.

44. Ms. Hulsizer denied that she was even aware of the reason that Ms. Sylvester was terminated.

**2.  Plaintiff intends to prove the following contested facts with regard to damages:**

Ms. Sylvester was unemployed for approximately eighteen (18) months, resulting in significant lost wage economic damages. Ms. Sylvester has also suffered extensive emotional

distress as a result of losing her beloved career as a casino dealer and has documented mental health treatment to verify the damages. Ms. Sylvester is seeking monetary damages including, but not limited to, lost wages, emotional distress, anxiety, embarrassment, humiliation, punitive damages, pre and post-judgment interest, attorney's fees with NJLAD enhancement, costs of suit, and any other relief deemed equitable by the Court. As a result of the Defendant's intentional and outrageous actions toward the Plaintiff, Ms. Sylvester has suffered reputational and other emotional distress damages. Defendant's actions were outrageous and beyond all bounds of human decency, justifying the imposition of punitive damages against Defendant.

## PART IV.    **DEFENDANT'S CONTESTED FACTS:**

    **1.  Defendant intends to prove the following contested facts with regard to liability:**

        1.    On or about September 18, 2015, Resorts announced a new customer service initiative called "GET it!" and a training session in connection with the initiative for management level employees, including supervisors. "GET" stands for "Greet Engage and Thank."

        2.    In developing the training program, Resorts tried to make the program enjoyable for its attendees, adding humor, ice breaker activities and team building tasks.

        3.    Participants were advised in advance of the training that they should "be prepared to do the hula, impersonate Elvis, dance to YMCA, and many, many more exciting things!"

        4.    Despite having seen the memo, Plaintiff never advised anyone at Resorts that she would not be able to participate in the training, nor did she tell anyone at Resorts that she believed she would have any difficulty participating in the training.

        5.    At no point in time did Plaintiff ever express any concerns to Resorts about the training.

- 8 -

6.      The training session, which Plaintiff attended on September 22, 2015, involved several team building and icebreaker activities, as well as presentations regarding customer service.

7.      Upon arriving at the training, to lighten the mood, participants were given a nametag, but instead of writing their actual name, they were to write the name of their pet and the name of the street on which they lived.

8.      Once the participants were seated, Barbara Hulsizer, who is the Executive Director of Workforce Development for Resorts, provided an introduction to the program, describing its purpose and objectives.

9.      Thereafter, the attendees were asked to stand up to engage in an ice breaker activity, which involved having the attendees pass a beach ball around, and depending on the color that the attendee's hand landed on, the attendee was asked a question or asked to do an activity.

10.     Ms. Hulsizer was in the back of the room observing as this activity was conducted.

11.     A few participants who had not yet had a turn sat down, including Plaintiff.

12.     After Plaintiff sat down, Ms. Hulsizer observed Plaintiff turn to the person next to her with a scowl on her face, and heard Plaintiff state, "I'm not doing this."

13.     Plaintiff does not recall whether she made any comments to anyone about the beach ball activity.

14.     The shift manager conducting the activity asked those individuals who had sat down to stand back up.

15.     When the beach ball finally got to Plaintiff, she was asked a question to the effect of what her favorite movie was or what her favorite quote was, and instead of engaging in the activity, Plaintiff flatly responded "I don't have one."

16.     So as not to ruin the mood and pace of the activity, the management employees running the program just moved on.

17.     The next exercise involved an activity to work on team building skills. The exercise involved the use of a hula hoop, which was being held up by the fingers of three to four people.

18.     The goal of the exercise was to get the hula hoop to the ground together and no one's fingers were supposed to come off the hula hoop.

19.     Ms. Hulsizer again heard Plaintiff state "I'm not doing it," while displaying what Ms. Hulsizer perceived to be a very unprofessional and negative attitude.

20.     Ms. Hulsizer observed Plaintiff eventually give a half-hearted effort at the activity.

21.     Plaintiff does not recall whether she made any comments to anyone about the hula hoop exercise.

22.     Shortly before the training session ended, at approximately 11:45, Plaintiff and another employee stood up to leave.

23.     A Casino Shift Manager, who also was attending the training and was superior in title to Plaintiff and the other employee who stood up to leave early, instructed the two to sit back down.

24.     Ms. Hulsizer also instructed them to sit back down as the program was not yet over.

25.     Plaintiff retorted that they needed to get to work.

26.     Ms. Hulsizer responded that their managers knew where they were and that they needed to remain for the rest of the program.

27.     Ms. Hulsizer took over the class with approximately 15 minutes left and discussed the important issue of leadership accountability.

28.     At one point, trying to get Plaintiff's attention, Ms. Hulsizer addressed Plaintiff directly, but Plaintiff did not acknowledge Ms. Hulsizer or respond to her.

29.     Ms. Hulsizer was furious with Plaintiff's behavior during the training, and found her to be very disrespectful.

30.     Ms. Hulsizer had spent a lot of time developing this training session, so she was incensed by Plaintiff's conduct.

31.     As a result, Ms. Hulsizer contacted Danny Fanty, the Executive Director of Casino Games, as well as Kevin Brady, the Vice President of Table Games, to discuss Plaintiff's conduct during the training, which Ms. Hulsizer felt was insubordinate, unprofessional and disruptive.

32.     Ms. Hulsizer also reported her observations of Plaintiff during the training to Mark Giannantonio, the CEO of Resorts.

33.     When she first spoke with Kevin Brady about Plaintiff's conduct during the training session, Ms. Hulsizer got the impression from Mr. Brady's response that he was contemplating terminating Plaintiff.

34.     According to Mr. Brady, employee participation was a key component of the "GET it" training program, which was designed to align with Mohegan Sun's culture of training

for customer service.  (Mohegan Sun had partnered with Resorts to manage casino operations and assist Resorts in becoming more competitive in the struggling Atlantic City market.)

35.     Daniel Fanty, the Executive Director of Table Games, believed that the conduct Plaintiff exhibited during the "GET It" training seminar was insubordinate.

36.     Based on what Ms. Hulsizer had described about Plaintiff's conduct during the training, Mr. Fanty, Mr. Brady and Ms. Hulsizer discussed how her perception of Plaintiff, a supervisory employee, was the total antithesis of what the games department stood for, and they discussed how someone who conducted themselves in that manner would certainly not be able to go on instructing and managing other employees.

37.     The decision to terminate Plaintiff was made based on the information supplied by Ms. Hulsizer.

38.     Plaintiff never told anyone at the training that she was unable to participate in the training.

39.     Plaintiff never told anyone at the training that she had a disability.

40.     Plaintiff did not disclose to anyone during the training session that she was under a chiropractor's care.

41.     Plaintiff did not tell anyone at the training that she was under a chiropractor's care or that she was suffering from menstrual cramps or back pain.

42.     Plaintiff did not inform anyone at the training that she was unable to participate in the training activities because of pain or disability.

43.     Plaintiff did not ever complain to anyone about the training program.

44.     Plaintiff never made a request to anyone at Resorts for an accommodation of a disability.

45.     At no time prior to her termination did Plaintiff make anyone at Resorts aware that she was suffering from an alleged disability.

46.     The disciplinary document terminating Plaintiff had already been typed up and was face down on the desk when Plaintiff entered the meeting with Danny Fanty and Kevin Brady.

47.     Plaintiff never told Mr. Fanty or Mr. Brady that she was unable to participate in any of the games or activities at the September 22, 2015 training.

48.     Plaintiff did not give Mr. Fanty or Mr. Brady any explanation that would excuse the conduct in which she was reported to have engaged during the training session.

49.     At the conclusion of the meeting,  Mr. Fanty turned the disciplinary document over and signed it.

50.     The reason given to Plaintiff for her termination was typed on the paper Mr. Fanty signed.

51.     Plaintiff was terminated for her "uncooperative and unprofessional conduct displayed at a recent training class."

52.     Plaintiff recalls that this is what she read in the termination paperwork she was given at the time of her termination.

53.     Plaintiff does not know who was involved in the decision to terminate her.

54.     Plaintiff does not know when the decision was made to terminate her.

55.     Plaintiff does not have any facts or evidence that would suggest that the reason that was typed on the termination paperwork was not the real reason for her termination.

56.     Plaintiff never made a complaint to anyone at Resorts during her employment there that she felt she was being discriminated against in any way.

- 13 -

57.     No one else refused to participate in the "GET It" training program or conducted themselves in the way Plaintiff conducted herself during the "GET It" training program.

58.     Plaintiff has no evidence that anyone at Resorts had knowledge that she had a disability.

59.     Plaintiff engaged in insubordinate and unprofessional conduct during the training session on September 22, 2015.

60.     Plaintiff's insubordinate and unprofessional conduct during the September 22, 2015 training session were the antithesis of Resorts' customer service initiatives and values.

61.     Danny Fanty did not have knowledge that Plaintiff had an alleged disability at the time he terminated her employment.

62.     Kevin Brady did not have knowledge that Plaintiff had an alleged disability at the time he terminated her employment.

63.     Plaintiff cannot show that Resorts' preliminary decision to terminate her employment due to Ms. Hulsizer's reports of Plaintiff's conduct at the training session took place under circumstances that suggest unlawful discrimination.

64.     Plaintiff's alleged disability was not a motivating factor in the decision to terminate her employment.

65.     Resorts did not discriminate against Plaintiff on the basis of an alleged disability.

66.     Resorts terminated Plaintiff for the reason articulated in the termination document given to her, which was her "uncooperative and unprofessional conduct displayed at a recent training class."

67. Even if the jury were to believe that Plaintiff disclosed an alleged disability at the time Danny Fanty and Keven Brady met with Plaintiff on September 25, 2015, their decision to uphold the termination was not motivated by discriminatory intent.

**2. Defendant intends to prove the following contested facts with regard to damages:**

1. Plaintiff suffered no damages.

2. Resorts did not cause any damage to Plaintiff.

3. Plaintiff failed to mitigate her damages.

4. Resorts did not participate in especially egregious wrongful conduct, nor did it act with willful disregard to any alleged especially egregious wrongful conduct on the part of upper management, *i.e.* Resorts never engaged in any intentional wrongdoing in the sense of an "evil-minded act," nor did it ever willfully disregard any rights of the Plaintiff.

**PART V.      WITNESSES and SUMMARY OF TESTIMONY:**

**A.    Plaintiff's Witnesses and Summary of Their Testimony**
  **1. Plaintiff intends to call the following witnesses with regard to liability and anticipates they will testify as follows:**

1. Plaintiff, Debra Sylvester
   Galloway, New Jersey.
   Ms. Sylvester's testimony will be conformity with her deposition. She will describe her employment, disability, and circumstances surrounding her termination.

2. Dr. Tony Holvick
   Atlantic County Family Spine & Rehab Center - Galloway
   506 South New York Road
   Galloway, NJ 08205
   Dr. Holvick will testify with regard to the medical conditions of Plaintiff, her need for a medical leave of absence, and corresponding medical records.

3. Dr. Thomas Keating
   Atlantic County Family Spine & Rehab Center - Galloway
   506 South New York Road
   Galloway, NJ 08205

- 15 -

Dr. Holvick will testify with regard to the medical conditions of Plaintiff, her need for a medical leave of absence, and corresponding medical records.

**2.**   **Plaintiff intends to call the following witnesses with regard to damages and anticipates they will testify as follows:**

1.   Plaintiff, Debra Sylvester
Galloway, New Jersey.
Ms. Sylvester's testimony will be conformity with her deposition. She will describe her financial and emotion damages.

2.   Heather Wolfenden - Therapist
It Takes A Family, LLC
335 East Jimmie Leeds Road, Building 200
Galloway, NJ 08205
Ms. Wolfenden will testify with regard to the mental health conditions of Plaintiff, the emotional distress Plaintiff reported as a result of Defendant's actions, and corresponding medical records.

Plaintiff reserves the right to call any and all witnesses identified by Defendant who may not appear on Plaintiff's list. Plaintiff reserves the right to amend or supplement this list to rebut any evidence or testimony introduced by Defendant. Plaintiff also reserve the right to call some or all of the witnesses listed by Defendant.

**B.**   **Defendant's Objections to Plaintiff's Witnesses:**

1.   Resorts objects to Plaintiff calling Dr. Tony Holvick, Atlantic County Family Spine & Rehab Center – Galloway as Plaintiff never identified Dr. Holvick during the course of discovery, nor did she ever comply with the provisions of Fed. R. Civ. P. 26(a)(2).   Moreover, the proposed subject matter of the testimony of Dr. Holvick is irrelevant to the issues to be decided by the jury.

2.   Resorts objects to Plaintiff calling Dr. Thomas Keating, Atlantic County Family Spine & Rehab Center – Galloway, as Plaintiff never identified Dr. Keating during the course of discovery, nor did she ever comply with the provisions of Fed. R. Civ. P. 26(a)(2). Moreover, the proposed subject matter of the testimony of Dr. Holvick is irrelevant to the issues to be decided by the jury.

3.   Resorts objects to Plaintiff calling Heather Wolfenden from It Takes a Family as Plaintiff never identified Heather Wolfenden as a witness during the course of discovery, nor did she ever comply with the provisions of Fed. R. Civ. P. 26(a)(2). Moreover, to the

- 16 -

extent Plaintiff seeks to call Ms. Wolfenden for the purpose of simply relating what Plaintiff told her, such proposed testimony is inadmissible hearsay.

4.     Resorts objects to Plaintiff calling any witnesses not specifically identified on her witness list unless otherwise permitted by the Federal Rules of Evidence.

**C.     Defendant's Witnesses and Summary of Their Testimony**

1.   **Defendant intends to call the following witnesses with regard to liability and anticipates they will testify as follows:**

1.   Barbara Hulsizer, Executive Director of Workforce Development, Resorts
c/o Russell L. Lichtenstein, Esquire
Cooper Levenson, P.A.

Ms. Hulsizer will testify regarding the customer service initiatives and values of Resorts and their role in the "Driving Customer Service Through Leadership" training program on September 22, 2015, and her personal observations of Plaintiff's insubordinate, uncooperative and unprofessional conduct during the training program held on September 22, 2015, which lead to Plaintiff's termination. Ms. Hulsizer also will testify that Plaintiff never mentioned an alleged disability to her, and that she was never aware of any alleged disability Plaintiff now claims she was suffering from at the time of the training program on September 22, 2015.

2.   Danny Fanty, Executive Director of Casino Games, Resorts
c/o Russell L. Lichtenstein, Esquire
Cooper Levenson, P.A.

Mr. Fanty will testify regarding his discussions with Ms. Hulsizer regarding Plaintiff's conduct during the "Driving Customer Service Through Leadership" training program, the customer service initiatives and values of Resorts, the decision to terminate Plaintiff's employment and the termination meeting with Plaintiff.

3.   Kevin Brady, Vice President of Table Games, Resorts
c/o Russell L. Lichtenstein, Esquire
Cooper Levenson, P.A.

Mr. Brady will testify regarding his discussions with Ms. Hulsizer regarding Plaintiff's conduct during the "Driving Customer Service Through Leadership" training program, the decision to terminate Plaintiff's employment and the termination meeting with Plaintiff.

4.   Tina Smith, Employment Manager, Resorts
c/o Russell L. Lichtenstein, Esquire

Cooper Levenson, P.A.

Ms. Smith will testify regarding her observations of Plaintiff's insubordinate, uncooperative and unprofessional conduct during the September 22, 2015 training program.

5. Sandra Shinsato, Workforce Development Specialist, Resorts
   c/o Russell L. Lichtenstein, Esquire
   Cooper Levenson, P.A.

   Ms. Shinsato will testify regarding her observations of Plaintiff's insubordinate, uncooperative and unprofessional conduct during the September 22, 2015 training program.

6. Mark Giannantonio, President and CEO, Resorts
   c/o Russell L. Lichtenstein, Esquire
   Cooper Levenson, P.A.

   Mr. Giannantonio will testify regarding his meeting with Ms. Hulsizer to discuss Plaintiff's conduct and his agreement to Mr. Brady's recommendation regarding termination. Mr. Giannantonio will also testify regarding the mandatory meeting he arranged for all supervisory personnel in the Games Department to discuss Resorts' service and leadership initiatives as a result of Plaintiff's conduct during the training on September 22, 2015.

7. Francis Iannello, Casino Administrator, Resorts
   c/o Russell L. Lichteinstein, Esquire
   Cooper Levenson, P.A.

   Mr. Iannello will testify regarding his observation of plaintiff's refusal to participate in activities during the September 22, 2015 training program.

8. Frank Jakimowicz, Assistant Shift Manager, Table Games, Resorts
   c/o Russell L. Lichtenstein, Esquire
   Cooper Levenson, P.A.

   Mr. Jakimowicz will testify regarding his communications with Plaintiff regarding the training and the meeting with Mr. Fanty and Mr. Brady.

2. **Defendant intends to call the following witnesses with regard to damages and anticipates they will testify as follows:**

   1. Plaintiff will testify that she never applied for another dealer position after her termination from Resorts.

- 18 -

**D.**     **Plaintiff's Objections to Defendant's Witnesses:**

1.  Plaintiff objects to Defendant calling any witnesses not specifically identified on its witness list unless otherwise permitted by the Federal Rules of Evidence.

## PART VI.     EXPERT WITNESSES:

1.  Plaintiff's expert witnesses are:  N/A

2.  Defendant's objection to the qualifications of plaintiff's expert witnesses are:

3.  Defendant's expert witnesses are: N/A

4.  Plaintiff's objections to the qualifications of plaintiff's expert witnesses are:

## PART VII.   EXHIBITS

**A.**     **Plaintiff's Exhibits**

1.  **Plaintiff intends to introduce the following exhibits into evidence (list by numbers with a description of each exhibit);**

    1.  Resorts Supervisory Performance Appraisal dated April 6, 2015

    2.  Customer Letter dated July 26, 2015

    3.  Resorts Certificate dated August 12, 2015

    4.  FMLA Application dated September 23, 2015

    5.  Atlantic County Family Spine & Rehab Center Medical Records

    6.  It Takes A Family, LLC Therapy Records

    7.  Plaintiff's notes evidencing efforts to secure re-employment (P0016-P0022)

    8.  E-mails evidencing efforts to secure re-employment (P0023-P0049)

    9.  Plaintiff's 2016 and 2017 W-2 tax forms

2.   **Defendant objects to the introduction of plaintiff's exhibit (set forth number of exhibit and grounds for objection).**

P-1   Resorts Supervisory Performance Appraisal dated April 6, 2015: Resorts objects to the introduction of Plaintiff's performance appraisals because they have no relevance to the issues to be presented to the jury. Plaintiff was not terminated for her overall performance; she was terminated for her conduct during a training session pertaining to customer service. Moreover, any statements set forth in the document constitute inadmissible hearsay.

P-2   Customer Letter dated July 26, 2015: Resorts objects to the introduction of the customer letter dated July 26, 2015, because it has no relevance to the issues to be presented to the jury. Plaintiff was not terminated in connection with her overall job performance; she was terminated for her conduct during a training session pertaining to customer service. Moreover, the contents of the document constitute inadmissible hearsay.

P-3   Resorts Certificate dated August 12, 2015: Resorts objects to the introduction of the certificate given to Plaintiff on one occasion in connection with her performance, because it has no relevance to the issues to be presented to the jury. Plaintiff was not terminated for her overall performance; she was terminated for her conduct during a training session pertaining to customer service.

P-4   FMLA Application dated September 23, 2015: Resorts objects to the introduction of Plaintiff's FMLA application because it is irrelevant to the issues to be presented to the jury. Plaintiff's claims arising under the FMLA were dismissed on summary judgment. Moreover, the record clearly demonstrates that at no time prior to her termination did Plaintiff ever submit FMLA paperwork to Resorts in connection with the condition she alleges she had at the time of her training session on September 22, 2015, nor did Plaintiff ever advise anyone at Resorts prior to her termination that she intended to take FMLA leave.

P-5   Atlantic County Family Spine & Rehab Center Medical Records: Resorts objects to the introduction of any medical records from Atlantic County Family Spine & Rehab Center as the information contained in such records constitutes inadmissible hearsay. Moreover, Plaintiff never supplied any medical records during the course of discovery.

P-6   It Takes A Family, LLC Therapy Records: Resorts objects to the introduction of any therapy records from It Takes a Family as the information contained in such records constitutes inadmissible hearsay. Moreover, Plaintiff never supplied any therapy records during the course of discovery.

P-7     Plaintiff's notes evidencing efforts to secure re-employment (P0016-P0022):  Resorts objects to the introduction of the foregoing notes as they constitute self-serving hearsay statements.

P-8     E-mails evidencing efforts to secure re-employment (P0023-P0049):  Resorts objects to the introduction of the foregoing documents as they constitute self-serving hearsay statements.

P-9     Plaintiff's 2016 and 2017 W-2 tax forms:  Resorts objects to the introduction of Plaintiff's 2016 and 2017 tax forms as Plaintiff has never produced these documents to Resorts.

B.   **Defendant's Exhibits**

1.     **Defendant intends to introduce the following exhibits into evidence (list by number with a description of each exhibit):**

D-1     Resorts Memo dated September 18, 2015 from Barbara Hulsizer, Executive Director of Workforce Development to "Supervisors and Above – Table Games" regarding "Driving Customer Service through Leadership" Training (Resorts/Sylvester 00595).

D-2     Resorts Employee Handbook (Resorts/Sylvester 00001-00041) – specifically:

- Resorts at-will policy statement at pp. 4 & 40 of the Employee Handbook (Resorts/Sylvester 00005 & 00041);

- Resorts' policy regarding equal employment opportunity at p. 5 of the Employee Handbook (Resorts/Sylvester 00006);

- Resorts' policy regarding requests for accommodations of disabilities at p. 6 of the Employee Handbook (Resorts/Sylvester 00007);

- Resorts' policy regarding training and development at pp. 9-10 of the Employee Handbook (Resorts/Sylvester 00010-00011);

- Resorts' Standards of Conduct at pp. 21-24 of the Employee Handbook (Resorts/Sylvester 00022-00025); and

- (other portions to be determined).

D-3     Plaintiff's Employee Handbook receipt and at-will employment acknowledgement dated October 23, 2011 (Resorts/Sylvester 00106).

D-4   Disciplinary Action Notice dated September 25, 2015, terminating Plaintiff's employment (Resorts/Sylvester 00043).

D-5   Plaintiff's Answers to Interrogatories (portions to be determined).

D-6   Plaintiff's Deposition Transcript (portions to be determined).

D-7   Resorts' Request for Information form for use in connection with requests for accommodation of disabilities (Resorts/Sylvester 00535-00539).

**2.      Plaintiff objects to the introduction of defendant's exhibit (set forth number of exhibit and grounds for objection).**

D-7   Resorts' Request for Information form: Plaintiff objects to the introduction of the alleged form, because it has no relevance to the issues to be presented to the jury. No witnesses including Plaintiff, testified that they had even seen this form before and its mere existence is irrelevant to Plaintiff's claims. The standalone and unacknowledged form was never provided to Plaintiff. Moreover, any attempt to introduce this document would be unduly prejudicial, and confusing, as Plaintiff did request medical leave forms from Defendant, was provided with a different form than D-7, and brought the received form to her physician for completion ("P-4").

## PART VIII.   LAW

### A.   Plaintiff

**1.      Plaintiff's statement of the legal issues in this case:**

1.   Did Defendant discriminate against Plaintiff and interfere with her rights under the New Jersey Law Against Discrimination ("NJLAD")?

2.   Is Plaintiff entitled to compensatory damages?

3.   Is Plaintiff entitled to damages for emotional distress?

4.   Is Plaintiff entitled to punitive damages?

5.   Is Plaintiff entitled to Court costs and reimbursement of attorney fees?

6.   Is Plaintiff entitled to reinstatement?

7.   Whether, as to the NJLAD discrimination claim, can Plaintiff prove, by a preponderance of the credible evidence, a prima facie case of NJLAD discrimination, more specifically, whether she can prove that (1) that she is a member of a protected class (i.e. that she was disabled or perceived to be disabled); (2) that she was otherwise qualified and performing

the essential functions of the job; (3) that she was terminated; and (4) that the termination took place under circumstances that give rise to an inference of unlawful discrimination.

8. Whether, as to Plaintiff's NJLAD claim, Defendant can articulate legitimate, non-discriminatory reasons for the adverse employment actions.

9. Whether, as to Plaintiff's NJLAD claim, Ms. Sylvester can prove, by a preponderance of the credible evidence, that Defendant's reasons for termination are pretextual, and that Plaintiff's protected characteristics and traits were the real reasons for the actions taken.

## B. Defendant

### 1. Defendant's statement of the legal issues in this case.

1. Whether Plaintiff can establish a *prima facie* case of discriminatory discharge based on a disability.

   a. Whether Plaintiff can establish that she was suffering from a disability at the time of her termination;

   b. Whether Plaintiff can establish she was qualified for the position of dual rate dealer when her conduct during the training session was the antithesis of the standards Resorts had set for its supervisory personnel.

2. If Plaintiff can establish a *prima facie* case of discriminatory discharge based on a disability, whether she can demonstrate evidence of pretext to discredit Resorts' articulated legitimate, non-discriminatory reason for its discharge of Plaintiff.

3. Whether Plaintiff can meet her ultimate burden of proving by a preponderance of the evidence that Resorts was motivated by discriminatory animus when it made the decision to terminate her.

4. If Plaintiff can sustain her burden with regard to liability, can she establish she entitled to back pay?

   a. If Plaintiff is entitled to back pay, what amount is she entitled to?

   b. Did Plaintiff fail to mitigate her damages?

   c. If Plaintiff is entitled to back pay, should any such entitlement be barred or reduced by Plaintiff's failure to mitigate her damages?

5. Whether Plaintiff can show she suffered emotional distress as a result of her discharge.

6. Whether Plaintiff can establish that she is entitled to punitive damages.

- 23 -

a.    Whether Plaintiff can prove:

    1.    willful indifference to her rights under the New Jersey Law Against Discrimination; AND

    2.    that Resorts' conduct was especially egregious, *i.e.* "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard."

7.    Whether Plaintiff's counsel is entitled to attorneys' fees in light of the number of failed claims Resorts was required to defend.

**PART IX.**    **MISCELLANEOUS**

Set forth any additional stipulations of counsel and/or motions on other matters which require action of the court.

Set forth any notice required to be given under Rules 40(b), 609(b), 803(24) and 804(b)(5), Federal Rules of Evidence.

**PART X.**    **NON-JURY TRIALS**    (N/A)

**PART XI.**    **JURY TRIALS**

No later than seven days prior to the scheduled trial date or at such time as the court may direct:

1.    Each party shall submit to the District Judge and to opposing counsel a trial brief or memorandum with citations and authorities and arguments in support of the party's position on all issues of law. The trial brief shall be electronically filed.

2.    Each party shall submit to the District Judge and to opposing counsel written requests for charges to the jury. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting same; and shall be numbered in sequence.

IF you have the capability, the Proposed Requests for Charge should be submitted on computer disk, Work Perfect format. All proposed requests for charges shall be electronically filed, and a paper copy must also be provided.

3.    Each party shall submit to the judge and to opposing counsel proposed voir dire questions.

**EACH OF THESE ITEMS IS TO BE FILED PRIOR TO THE FIRST TRIAL DATE EVEN IF THE CASE IS CONTINUED.**

**COUNSEL ARE ON NOTICE THAT FAILURE TO PROVIDE TIMELY COMPLIANCE WITH THE REQUESTS OF PART X AND XI MAY RESULT IN THE POSTPONEMENT OF TRIAL AND THE ASSESSMENT OF JUROR AND OTHER COSTS AND/OR THE IMPOSITION OF SANCTION.**

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorney(s) for Plaintiff(s):                    Attorney(s) for Defendant(s):


s/ Zachary R. Wall                              /s Stephanie E. Farrell
Zachary R. Wall, Esquire                        Russell L. Lichtenstein, Esquire
Rachel S. London, Esquire                       Stephanie E. Farrell, Esquire
WALL & LONDON LLC                               COOPER LEVENSON, P.A.
34 Tanner Street, Suite 4                       1125 Atlantic Avenue – 3rd Floor
Haddonfield, NJ 08033                           Atlantic City, NJ 08401
Phone: 856-428-1480                             Phone: 609-344-3161
Fax: 856-428-1446                               Fax: 609-344-0939
E-mail: zwall@wallandlondon.com                 E-mail: rlichtenstein@cooperlevenson.com


Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this 6th day of December , 2017.


Karen M. Williams, U.S.M.J.
UNITED STATES MAGISTRATE JUDGE
United States District Court
For the District of New Jersey